358 S.E.2d 815

**STATE of West Virginia**

v.

**Boyd THOMPSON, Jr.**

**No. 17071.**

Supreme Court of Appeals of West Virginia.

June 16, 1987.

David Johnson, Asst. Atty. Gen., for appellant.

Ray L. Hampton, II, Barrett, Chafin, Lowry & Hampton, Huntington, for appellee.

NEELY, Justice:

While investigating the theft of a number of buck stoves from Buck Stoves, Inc., of Gauley Bridge, West Virginia, Trooper John T. Morrison received information from a confidential informant with regard to the location of the stolen buck stoves. All previous anonymous tips had proved fruitless. Subsequently, Corporal Fred B. Woods accompanied the confidential informant, Iris Angel, to Mr. Boyd Thompson's property on 3 June 1982. There, Corporal Woods and Mrs. Angel spoke with an employee of Mr. Thompson, who mentioned that he had helped unload some buck stoves and that two of the stoves had been installed in the appellant's residence.

As a result of this information, Trooper Morrison executed an affidavit and complaint for a search warrant that was issued on 4 June 1982. Trooper Morrison searched Mr. Thompson's property and found two buck stoves in the house with the same serial numbers as those that had been stolen. Mr. Thompson was arrested and indicted on two counts of knowingly receiving stolen property in violation of *W.Va.Code* 61–3–18 [1923].

At trial, the State adduced testimony from its witnesses, David Angel, James Ray Jarvis and Fred Grosse, that they were involved in the theft of the buck stoves and a 550 John Deere Bulldozer, and that these items were transported to Poca-hontas County and hidden on the farm of Mr. Thompson. In his defense, Mr. Thompson maintained that the two buck stoves that were recovered from his residence were purchased by him at a flea market in Pence Springs, West Virginia. This testimony was corroborated by three acquaintances of the appellant.

The jury returned a verdict of guilty on both counts. Mr. Thompson now asserts in this appeal that the affidavit in support of the search warrant for the buck stoves was patently false. We agree and reverse.

I

Appellant's challenge to the search warrant for the buck stoves is grounded on an insufficient affidavit; if the affidavit is defective, he argues, any evidence obtained under the warrant should have been excluded. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The law requires an affiant to establish the reliability of any confidential informant and demonstrate the basis for his assertion about the stolen property's location. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. U.S.,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *State v. Stone,* 165 W.Va. 266, 268 S.E.2d 50 (1980).

The grounds for the search warrant for the buck stoves was "... that a confidential and reliable informant who has been reliable in the past, stated that said stolen property was located at the above listed residence of Boyd Thompson, Jr." This statement that the informant had been reliable in the past was patently false.

At the suppression hearing held Trooper Morrison admitted that he had not used the informant previously:

Q. How many times had you used this reliable informant to give you information in the past?

A. None.

Q. How many times had any of your brother police officers used this reliable informant to assist in any prosecutions in the past?

A. That, I couldn't—I wouldn't know. We are familiar with this subject but as far as any other officer using her on any case I would not be familiar with.

Q. When you made reference in your probable grounds for the issuance of the warrants, you state that, "A confidential and reliable informant who had been reliable in the past"; to what were you referring that they had been reliable in the past?

A. I really don't know right now.

Q. Did you know at the time you obtained the search warrant?

A. Any information from her in the past, no.

Q. So at the time of the search warrant you didn't have any reliable information in the past?

A. No.

Trooper Morrison later testified about his own personal knowledge of the confidential informant, Iris Angel:

Q. Did you know anything about her past conduct?

A. No, sir.

Q. Did you know her identity at the time of obtaining this search warrant?

A. Yes sir.

Q. Did you know anything about any other investigations that she participated with, that would make her reliable?

A. No, sir, I didn't.

Corporal Woods accompanied the confidential informant, Iris Angel, to appellant's property on 3 June 1982. With regard to the informant's reliability, Corporal Woods testified that he had no personal knowledge of Mrs. Angel before he saw her on 3 June 1982. He also testified that he was with Trooper Morrison when they went to the magistrate to get the search warrant and that there was no additional information beyond Trooper Morrison's affidavit submitted in this matter.

■ In denying suppression of the stoves seized under the search warrant, the lower court acknowledged that the informant had no previous history of reliability. The Court noted that the officers did corroborate the information provided by the

informant independently, and the officers were familiar with the informant because her husband was a defendant in the original theft case.

However, Trooper Morrison testified that Mrs. Angel's husband had not yet been arrested in connection with the theft when the search warrant was issued. The fact that the troopers attempted to corroborate or did corroborate the information supplied by the informant would make her reliable *in the present,* not in the past. Regardless, this additional corroborating information was not provided to the magistrate at the time of the issuance of the warrant and therefore could not bolster the material submitted in the affidavit. There appears to be no U.S. Supreme Court authority for the proposition that a warrant can survive challenge when it is supported only by a false statement, even though facts could have been alleged at the time that would have justified the issuance of the warrant.

## II

■ In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court discussed the effect of false allegations in search warrant affidavits. The court made little distinction between intentional falsehoods and those made with reckless disregard for the truth. The court held that for purposes of the Fourth Amendment, false material must be excluded from an affidavit, and the affidavit's remaining contents must then be sufficient to establish probable cause. If the remaining material would not support issuance of the warrant, the search warrant must be voided and the fruits of the search excluded as we explained in Syl.Pt. 1 of *State v. Walls,* 170 W.Va. 419, 294 S.E.2d 272 (1982): "In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court held it constitutionally permissible under certain conditions to attack a search warrant affidavit. If such attack is successful, this will result in voiding the search warrant and rendering the property seized under such warrant inadmissible."

Applying the *Franks v. Delaware, supra* test, the excision of the false material about the informant's reliability in the case before us leaves the remaining probable cause to be only that a confidential informant alleged that stolen property was located at the residence of the appellant. This allegation standing alone is insufficient to establish probable cause; it does not demonstrate that the information received was reliable, or timely, or that the informant had personally seen the stolen property on the premises. *State v. Stone,* 165 W.Va. 266, 268 S.E.2d 50 (1980).[1]

### III

The State relies on *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) and the "good faith" exception established in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) to save the affidavit. The *Gates* test was first articulated in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and was later supplemented in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Both of those cases attempted to refine how hearsay involving an informant's tip should be evaluated to show probable cause. Under *Aguilar,* the search warrant affidavit must: (1) show the informant's "basis of knowledge", and (2) contain information that allows the magistrate to determine the informant's veracity. This veracity may be demonstrated by showing either that the informant is credible or the information supplied is otherwise reliable through some independent corroboration such as police investigation. Thus, the basis of knowledge and "veracity" became the standard two prong test under *Aguilar.*

In *Spinelli,* the court suggested that deficiencies in each prong might be repaired with corroborating information. The "veracity" prong could be satisfied if the police verified a part of the informant's story by independent investigation. The "basis of knowledge" prong could be met by a showing that the informant provided so much detail that he must be speaking from first hand knowledge and not just passing on rumors. Because varying factual patterns regarding how information is obtained serve as the basis for search warrant affidavits, the rules became complex. Lower courts became confused and began applying the two prongs independently and rigidly. Ultimately lower courts seemed to stray from the Supreme Court's original intent that only *some* facts bearing on the two particular issues be provided to the magistrate.

 Thus, in *Illinois v. Gates, supra,* the court both refined and clarified the test they had constructed in *Aguilar* and *Spinelli* and adopted a "totality of the circumstances" test to establish reliability and knowledge in meeting the requirement of probable cause. In *Gates* the court reasoned that different elements of probable cause should not be understood as separate, independent, mechanical requirements that have a technical, talismanic quality. Rather, the court held, all aspects of a warrant application should be viewed as parts of a bundle of tightly intertwined issues that may usefully illuminate the common sense, practical question of whether there is "probable cause." 462 U.S., at 230, 103 S.Ct. at 2328. But information presented to a magistrate must still establish probable cause on the face of the warrant or by other sworn testimony that attests to the "veracity" and basis of knowledge of the person supplying the information.[2] Mrs. Angel's statement standing

---

1. *See also, United States v. Cortina,* 630 F.2d 1207 (7th Cir.1980); *United States v. Character,* 568 F.2d 442 (5th Cir.1978); *United States v. Lyon,* 567 F.2d 777 (8th Cir.1977); *Commonwealth v. Reynolds,* 374 Mass. 142, 370 N.E.2d 1375 (1977); *State v. Little,* 560 S.W.2d 403 (Tenn., 1978).

2. Post *Gates* cases still require a sufficient showing of reliability and basis for knowledge. *See*

*United States v. Campbell,* 732 F.2d 1017, 1020 (1st Cir.1984) (no probable cause to support warrant for firearms when affidavit stated only that unknown informant reported receiving from unknown individual two shell casings claimed to have come from weapons illegally possessed by defendant); *United States v. Parker,* 722 F.2d 179, 182 (5th Cir.1983) (no probable cause when affidavit gave conclusory statement that probable cause established by "infor-

258

alone, however, does not meet the *Gates* "totality of the circumstances" test as we pointed out in Syl.Pt. 3 of *State v. Adkins,* 176 W.Va. 613, 346 S.E.2d 762 (1986): "Both the Fourth Amendment to the *United States Constitution* and Article III, Section 6 of the *West Virginia Constitution* provide that no warrant shall issue except upon probable cause supported by oath or affirmation. There is virtual unanimity that a warrant may not issue on unsworn testimony."

### III

■ The State next tries to fit the conduct of Trooper Morrison and Corporal Woods within the "good faith" exception established in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). There, the court held that the Fourth Amendment exclusionary rule should not be applied to bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid. *Leon* states that this good faith exception "is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." 468 U.S. at 922–923, 104 S.Ct. at 3420. Furthermore, *Leon* states that the good faith exception is not applicable in certain situations. Suppression of the evidence is appropriate where the magistrate issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false

except for his reckless disregard of the truth.[3]

Rather than falling under the "good faith" exception, Trooper Morrison's statement asserting that Mrs. Angel was a reliable informant showed at least a reckless disregard for the truth if not an intentional misrepresentation. Although *Leon* protects police work and evidence obtained from being excluded because of error beyond the control of investigating officers, here the error was completely within the control of the investigating officers.[4]

Accordingly, for the reasons set forth above, the judgment of the Circuit Court of Pocahontas County is reversed and the case is remanded for a new trial.

Reversed and remanded.

---

mation given by a reliable and credible person who had given correct information in the past that led to arrests and convictions."); *United States v. Kolodziej,* 712 F.2d 975, 977–978 (5th Cir.1983) (no probable cause for search of home and vehicles when affidavit stated only that three persons arrested for narcotics possession had identified defendant as source of supply; affidavit did not contain affirmative allegation that informant was known to be reliable or that independent investigation corroborated informant's tips).

**3.** Other instances where the good faith exception is inapplicable are: (1) where the issuing magistrate wholly abandons his judicial role

thus becoming a rubber stamp for the police; (2) the affidavit is so lacking in indicia of probable cause as to render official belief in the existence of probable cause entirely unreasonable; and (3) the warrant is so facially deficient—i.e. in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. 468 U.S. at 923; *See also State v. Adkins,* 176 W.Va. 613, 346 S.E.2d 762, 775 (1986).

**4.** Appellant also assigns three additional points of error. Because we must reverse this case on search and seizure grounds, these issues are not fairly raised.