407 S.E.2d 375

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Andrew G. HLAVACEK, Defendant Below, Appellant.**

**No. 19699.**

Supreme Court of Appeals of West Virginia.

Submitted March 5, 1991.

Decided June 27, 1991.

Susan H. Hewman Ikner & Hewman, L.C., Lewisburg, for appellant.

Joanna I. Tabit Sr. Asst. Atty. Gen., Charleston, for appellee.

BROTHERTON, Justice:

The appellant, Andrew G. Hlavacek, was indicted by the Grand Jury of Greenbrier County, West Virginia, on July 29, 1988, and charged with one felony count of possession of marijuana with the intent to deliver. After entering a plea of not guilty, the appellant moved to suppress the introduction of marijuana into evidence at trial. The motion was denied and the appellant was subsequently convicted of the

misdemeanor offense of possession of marijuana and placed on probation. The appellant now appeals his conviction, challenging a search of his person prior to arrest, the validity of a search warrant which was subsequently obtained by the police, and the admission into evidence of marijuana seized from the trunk of his car. For the reasons discussed below, we reverse the appellant's conviction.

The facts relevant to the appellant's arrest are as follows: At approximately 8:30 a.m. on June 20, 1988, Sergeant D.K. Hylton of the West Virginia Department of Public Safety received a telephone call from State Police Communications in Beckley, West Virginia. Hylton was advised that an informant had called to speak with him about a drug run that the appellant was going to make that day. At about 9:30 a.m. Hylton met with this informant, who told him that the appellant had left his home early that morning and was going to Frankford, West Virginia, to buy marijuana. Hylton then drove by the appellant's house and, after confirming that his car was not there, he proceeded to the Lewisburg area, where he later witnessed the appellant travelling south on Route 219. The appellant turned from the southbound lane of Route 219 onto I–64 West, and Hylton followed him for approximately twelve miles until they both pulled off the interstate at the Sam Black exit of I–64 and began driving west on Route 60. When the appellant stopped at a Shell gas station, Hylton turned his vehicle around and also pulled into the gas station.

Although he did not have a search warrant, Sergeant Hylton maintains he had a reasonable suspicion that the appellant was engaged in criminal activity as a result of the informant's tip. For this reason, Hylton approached the appellant, advised him of the information he had received from the unnamed informant, and asked him to consent to a search of his vehicle. When the appellant refused, Hylton told him that he

would obtain a warrant to search the vehicle. Hylton informed the appellant that he was not under arrest and was free to leave, but without his car. The appellant indicated that he would prefer to stay in the airconditioned State Police vehicle. Sergeant Hylton then asked Trooper L.P. Mullens to stay with and watch both the appellant and his car while Hylton went to the magistrate's office in Rupert, West Virginia, to obtain a search warrant.

Before he left Trooper Mullens alone to wait with the appellant, Sergeant Hylton frisked the appellant, conducting what he maintains was a protective search. During the frisk, Hylton asked the appellant to empty his pockets, which contained three marijuana cigarettes and a pair of surgical scissors. Hylton then arrested the appellant for possession of marijuana [1] and advised him of his constitutional rights. The appellant accompanied Sergeant Hylton to Rupert, where Hylton obtained a search warrant.[2] Upon searching the trunk of the appellant's car, Hylton discovered a brown paper bag, inside of which there were eight plastic baggies containing approximately one pound of marijuana.

Prior to trial, the appellant moved to suppress the introduction of the marijuana which was discovered in the trunk of his car. Arguments were heard on the suppression issues on May 1, 1989. The court then granted the parties additional time to brief the significant issues raised during these proceedings. A hearing was held on July 26, 1989, after which the trial court denied the appellant's motion to suppress.

On August 4, 1989, the appellant was tried for possession of marijuana with intent to deliver. He was convicted of the lesser offense of possession of marijuana in violation of W.Va.Code § 60A–4–401 (1971) and sentenced to three years' probation, which was conditioned upon his serving thirty days on fifteen consecutive weekends in the county jail.

1. Hlavacek was not indicted for this offense. During the trial of the instant case, the trial court prohibited the State from introducing any evidence of the marijuana which was found on Hlavacek's person.

2. Prior to obtaining this warrant, the appellant's car was towed in to the magistrate's office.

On appeal, the appellant argues that the trial court erred when it permitted the introduction of the evidence obtained as a result of the unlawful frisk and allowed any reference to this evidence at trial. The appellant maintains that the "poisonous fruit" of the initial search of his person should have been omitted from the affidavit for the warrant because the search was improperly motivated and its scope was overbroad.

The State argues that the totality of the circumstances warranted Sergeant Hylton's reasonable belief that the safety of his fellow officer would be endangered if he left him alone with the appellant. The State contends that prior to frisking the appellant, Sergeant Hylton independently corroborated the information which was provided by his confidential informant and thus he reasonably suspected that the appellant was returning to Rupert after picking up a load of marijuana. However, when Sergeant Hylton advised the appellant of the information he had received, the appellant refused to consent to a search of his vehicle. Thus, the State argues that after Hylton arranged for Trooper Mullens to stay with the vehicle while he obtained a search warrant, Hylton was justified in frisking the appellant for weapons. According to Hylton, he became suspicious when he told the appellant that he was free to go, but the appellant indicated that he wanted to stay with his car. Hylton maintains that at this point he reasonably believed the appellant might attempt to evade the inevitable search and move the vehicle

in his absence by resisting Trooper Mullens in some manner. The State argues that, because of the money and the danger involved in drug trafficking in this day and age, it is reasonable to believe that any individual who participates in such an endeavor would be armed.

We first address the issue of whether Sergeant Hylton's frisk of the appellant constituted an unreasonable search under the Fourth Amendment to the United States Constitution and article III, section 6 of the West Virginia Constitution. Upon review, we find that the so-called "protective search" was overbroad and unreasonable under the circumstances and therefore violative of the appellant's constitutional rights.

■ The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court held that a determination of the reasonableness of a stop and frisk must be based upon (1) whether the police conduct was justified at its inception,[3] and (2) whether the search was reasonably related in scope to the circumstances which justified the initial interfer-

---

**3.** In *Adams v. Williams,* 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972), the United States Supreme Court stated that a known informant's tip may contain sufficient "indicia of reliability" to justify a *Terry* stop even though it may not be sufficient to support the issuance of an arrest or search warrant. More recently, in *Alabama v. White,* 496 U.S. 325, ——, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301, 310 (1990), the Court addressed the issue in the context of a tip from an anonymous phone caller. The Court determined that independent police corroboration of "significant aspects of the informer's predictions imparted some degree of reliability to the other allegations made by the caller." The Court concluded that "under the totality of the circumstances the anonymous tip, as corroborated, exhibited sufficient indicia

of reliability to justify the investigatory stop of respondent's car." *Id.* For an interesting view of the impact of this case, *see* Recent Developments, *Anonymous Tips, Investigatory Stops and Inarticulate Hunches–Alabama v. White,* 110 S.Ct. 2412 (1990), 26 Harv.C.R.–C.L.L.Rev. 219 (1991).

In this case, the issue of whether the initial investigatory stop was justified was not raised by the appellant on appeal. Because we find other significant grounds for reversing the appellant's conviction, we will not address this point. Regardless, we believe it is important to emphasize that while a lower level of suspicion can justify a *Terry* investigatory stop, it will not necessarily satisfy the higher probable cause requirement for issuance of an arrest or search warrant.

ence. In *State v. Choat,* 178 W.Va. 607, 363 S.E.2d 493 (1987), this Court noted *Terry's* recognition of narrowly drawn authority which would "permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Id.,* 178 W.Va. at 612, 363 S.E.2d at 498, *quoting Terry v. Ohio,* 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. In syllabus point 3 of *Choat,* we stated:

> Where a police officer making a lawful investigatory stop has reason to believe that an individual is armed and dangerous, that officer, in order to protect himself and others, may conduct a search for concealed weapons, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be certain that the individual is armed; the inquiry is whether a reasonably prudent man would be warranted in the belief that his safety or that of others was endangered. *U.S. Const.* amend. IV. *W.Va. Const.* art. III, § 6.

■ Given the facts of the case now before us, we are not convinced that the circumstances reasonably warranted Sergeant Hylton's belief that his safety or that of his fellow officer was in jeopardy. However, even if such a belief were reasonable, Sergeant Hylton's frisk of the appellant exceeded that which is constitutionally permissible under the circumstances. In *Choat,* we commented that the police officer's search of the appellant was "limited in that he merely patted down the appellant's outer clothing. The officer confined his search to what was necessary to discover whether the appellant possessed a weapon and to disarm him once it was discovered." *Choat,* 178 W.Va. at 613, 363 S.E.2d at 499. In this case, Sergeant Hylton stated that requiring the appellant to empty his pockets made the frisk "more complete." While this is undeniably true, we conclude that the extent of the intrusion also made the frisk unconstitutional.

The appellant next argues that the three marijuana cigarettes which were seized as a result of the illegal search of the appellant should not have been allowed to provide the basis for the issuance of the subsequent search warrant. As we noted above, Sergeant Hylton arrested the appellant after discovering three marijuana cigarettes in his pocket. He then obtained a warrant to search the appellant's vehicle based upon the following affidavit:

> On June 20th, 1988, information was received by Sergeant D.K. Hylton, DPS, from a confidential informant source that the accused had left Rupert, West Virginia, enroute to Frankford, West Virginia, to obtain an undetermined amount of marijuana and the accused was witnessed traveling south on U.S. 19 from Frankford, West Virginia, then west on I–64 and *when stopped and frisked, marijuana was found in his right rear pants pocket.* Sergeant D.K. Hylton, WVDPS. (Emphasis added.)

The appellant maintains that if the information which resulted from the illegal frisk were omitted, the affidavit would not contain sufficient information to support the issuance of a search warrant. However, the State argues that even without mentioning the marijuana cigarettes, the affidavit was sufficient to support the issuance of the warrant. We disagree.

■ " 'Both the Fourth Amendment to the *United States Constitution* and Article III, Section 6 of the *West Virginia Constitution* provide that no warrant shall issue except upon probable cause supported by oath or affirmation. There is virtual unanimity that a warrant may not issue on unsworn testimony.' Syllabus Point 3, *State v. Adkins,* 176 W.Va. 613, 346 S.E.2d 762 (1986)." Syl. pt. 2, *State v. Thompson,* 178 W.Va. 254, 358 S.E.2d 815 (1987). " 'In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court held it constitutionally permissible under certain conditions to attack a search warrant affidavit. If such attack is successful, this will result in voiding the search warrant and rendering the property seized under such warrant inadmissible.' Syllabus Point 1, *State v. Walls,* [170] W.Va. [414], 294 S.E.2d 272 (1982)." Syl. pt. 1, *State v.*

*Thompson,* 178 W.Va. 254, 358 S.E.2d 815 (1987).

In *State v. Adkins,* 176 W.Va. 613, 346 S.E.2d 762, 769 (1986), this Court discussed a line of United States Supreme Court cases which dealt with the sufficiency of information contained in a search warrant affidavit. The most significant among these cases were *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In *Aguilar,* the Supreme Court stated that a "search warrant affidavit must (1) show the informant's 'basis of knowledge' and (2) must contain information so the magistrate can determine the informant's veracity by either showing (a) the informant is credible or (b) his information is otherwise reliable through some independent informant's corroboration such as police investigation." *Adkins,* 176 W.Va. at 620, 346 S.E.2d at 770.

The Supreme Court clarified *Aguilar* in *Spinelli,* in which it indicated that each of the prongs in *Aguilar's* test of the sufficiency of an affidavit could be satisfied with corroborating information. In *Adkins,* we explained that "[t]he 'veracity' prong could be satisfied if the police verified a part of the informant's story by independent investigation. This would tend to lend credence to the informant's whole story. It would be 'apparent that the informant had not been fabricating his report out of whole cloth.'" *Spinelli,* 393 U.S. at 417, 89 S.Ct. at 590, 21 L.Ed.2d at 644. As for the "basis of knowledge" prong, under *Spinelli* it "could be met by a showing that the informant provided so much detail as to indicate he must be speaking from firsthand knowledge and

not just passing on rumors." *Adkins,* 176 W.Va. at 621, 346 S.E.2d at 770.

The United States Supreme Court subsequently adopted the "totality of the circumstances" standard in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). With a return to this approach, however, the Supreme Court did not seek to abandon the two prongs of the *Aguilar–Spinelli* analysis. Rather, the Court attempted to simplify rules which were growing ever more complex. *Adkins,* 176 W.Va. at 624, 346 S.E.2d at 771.[4] In syllabus point 4 of *Adkins,* we discussed the "totality of the circumstances" standard:

> Under the Fourth Amendment to the United States Constitution and Article III, Section 6 of the West Virginia Constitution, *the validity of an affidavit for a search warrant is to be judged by the totality of the information contained in it.* Under this rule, a conclusory affidavit is not acceptable nor is an affidavit based on hearsay acceptable unless there is a substantial basis for crediting the hearsay set out in the affidavit which can include the corroborative efforts of police officers. (Emphasis added.)

We noted that "the Supreme Court took pains to emphasize in *Gates* ... that the totality rule was not meant to validate 'bare bones' affidavits." *Adkins,* 176 W.Va. at 624, 346 S.E.2d at 771. In evaluating the deficiencies in the *Adkins* affidavit, we found that:

> The factual basis for the affidavit in this case was solely based on an undisclosed confidential informant whose only fact statement as reported by the officer making the affidavit was that he had "observed marijuana inside the af ormentioned (sic) structure and in the controll (sic) of Danny Atkins (sic)." The war-

---

4. *See* Comment, *Illinois v. Gates: Broadening the Standard for Determining Probable Cause Based On Informants' Tips,* 41 Wash. & Lee L.Rev. 327, 335 (1984), in which the author states that when making a probable cause determination under the totality of the circumstances approach, "the magistrate does not analyze the two prongs of the *Aguilar-Spinelli* test as distinct requirements." Instead, the magistrate "analyzes the basis of knowledge and veracity evidence together to formulate a nontechnical probable cause determination. The purpose of the totality of the circumstances test is to increase the discretion of the magistrate by allowing him to make a practical, common sense probable cause determination free from overly technical rules and analyses." (Citations omitted.) *See also* Hanson, *The Aftermath of Illinois v. Gates and United States v. Leon: A Comprehensive Evaluation of Their Impact Upon the Litigation of Search Warrant Validity,* 15 W.St. U.L.Rev. 393 (1988).

rant affidavit lacks the date when the informant observed the drugs, which creates a staleness problem that has caused courts to find some search warrant affidavits to be deficient. Finally, the fact statement in the warrant affidavit provides absolutely nothing that supplements the informant's basis of knowledge to lend credence to his conclusory assertion much less anything about his reliability. There are no facts in the affidavit indicating that police investigation had tended to corroborate the informant's tip such as existed in the *Gates'* affidavit.

*Adkins,* 176 W.Va. at 624, 346 S.E.2d at 774. Thus, we concluded that the "meager" affidavit presented to the magistrate in *Adkins* was defective under the *Gates'* "totality rule." *Id.*

Likewise, in the case now before us the affidavit was insufficient for several reasons. Just as in *Adkins,* the factual basis for this affidavit was built almost exclusively upon the conclusory statements of an undisclosed confidential informant. However, the basis of the informant's knowledge is not disclosed. Why or how the informant knew that the appellant was travelling to Frankford, West Virginia, to buy marijuana is unclear. The judicial officer has no means by which to evaluate the reliability of the informant's assertions.

The State argues that Sergeant Hylton's independent investigation provided corroboration of the informant's tip. Independent police work may corroborate information contained in an affidavit for a search warrant. However, the details which are verified through further investigation must be both significant and specific in order to permit a judicial officer to impart some degree of reliability upon the confidential source of the information. In this case, the independent corroboration consisted of nothing more than Sergeant Hylton first determining that the appellant was not at home and then later witnessing him driving on a nearby well-travelled highway in a direction which happened to be consistent with the informant's information. This is not the type of highly specific information which, if verified, would permit a judicial officer to infer that the information contained in the affidavit was reliably obtained.

Next, the affidavit is devoid of any information attesting to the veracity of its "confidential informant source." Prior to *Gates,* in syllabus point 1 of *State v. Stone,* 165 W.Va. 266, 268 S.E.2d 50 (1980), this Court stated that:

> To constitute probable cause for the issuance of a search warrant, the affiant must set forth facts indicating the existence of criminal activities which would justify a search and further, if there is an unnamed informant, sufficient facts must be set forth demonstrating that the information obtained from the unnamed informant is reliable.

In *State v. Thompson,* 178 W.Va. 254, 358 S.E.2d 815 (1987), we stated that even under the *Gates* "totality of the circumstances" standard, "information presented to a magistrate must still establish probable cause on the face of the warrant or by other sworn testimony that attests to the 'veracity' and basis of knowledge of the person supplying the information." *Id.,* 178 W.Va. at 257, 358 S.E.2d at 818.

The State asks that we "avoid a hypertechnical default of the affidavit" in this case, and argues that "[i]f the warrant had inserted the word 'reliable' prior to the word informant, there would be no question as to its validity." We disagree. A substantive, common sense evaluation of the sufficiency of an affidavit requires more than a search for all the right words and phrases. Simply declaring that an informant is reliable does not make him reliable. Generally, when information received from a confidential informant is relied upon in an affidavit for a search warrant, the affidavit must contain information which establishes the informant's basis of knowledge and lends credibility to the informant's statements. Because the affidavit Sergeant Hylton presented to the magistrate in this case made no reference to the reliability of the informant or how he had come to possess his information, we conclude that the affidavit was "bare bones" and insufficient to support the is-

suance of a warrant to search the appellant's car.

■ Next, the State advances several theories upon which it asks this Court to "save" the warrant which permitted Sergeant Hylton to search the trunk of the appellant's car. First, the State argues that, even assuming that the frisk of the appellant which led to his arrest was unconstitutional, the marijuana discovered upon the appellant's person was used only in part as the basis to search for the additional marijuana which Sergeant Hylton reasonably believed was hidden in the trunk of the car. The State maintains that the marijuana which was found in the appellant's trunk would have inevitably been discovered "by lawful means pursuant to a properly executed search warrant." We disagree with this contention. After concluding that the affidavit presented in this case was insufficient to support the issuance of a warrant, we cannot accept the State's argument that even without mentioning the marijuana cigarettes, the remaining information contained in the affidavit set forth the requisite probable cause for issuance of the search warrant. Given the "bare bones" nature of the affidavit presented to the magistrate, a search warrant should not have been issued.

■ Finally, the State maintains that even if the search warrant was invalid, Sergeant Hylton acted reasonably and in good faith when he relied upon the warrant issued by a detached and neutral magistrate and proceeded to search the trunk of the appellant's car. Therefore, the State argues that the defective warrant should be salvaged by applying the "good faith" exception created by the United States Supreme Court in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

*Leon's* "good faith" exception "is based on the premise that the exclusion of evidence under the Fourth Amendment is not warranted where a police officer acts in good faith reliance on the warrant issued by the magistrate." *Adkins,* 176 W.Va. at 624, 346 S.E.2d at 774. However, there are circumstances in which the good faith exception is not applicable and suppression of the evidence is the appropriate remedy.[5] For example, in *Leon,* the Court stated that a "bare bones" affidavit could not hope to survive judicial scrutiny by relying upon the application of the good faith exception:

> Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a "bare bones" affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search. *See Whiteley v. Warden,* 401 U.S. 560, 568 [91 S.Ct. 1031, 1037, 28 L.Ed.2d 306, 313] (1971).

*Id.,* 176 W.Va. at 625, 346 S.E.2d at 775. In *Adkins,* we found that "the affidavit in question is so conclusory with regard to its probable cause information as to render it a 'bare bones' affidavit" and stated that "[e]ven under *Leon,* a bare bones affidavit is not subject to rehabilitation by the good faith exception." *Id.* Similarly, we find that the affidavit in this case cannot be redeemed through resort to this exception.

For the reasons stated above, we conclude that the frisk of the appellant was unconstitutional and the evidence which was subsequently seized as a result of the invalid search warrant was inadmissible at

---

**5.** The "good faith" exception is not applicable where:

(1) "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *Franks v. Delaware,* 438 U.S. 154 [98 S.Ct. 2674, 57 L.Ed.2d 667] (1978)"; (2) "the issuing magistrate wholly abandoned his judicial role" thus becoming a rubber stamp for the police; (3) the affidavit is "'so lacking in indicia of probable cause as to render official belief in its existence entire-

ly unreasonable.' *Brown v. Illinois,* 422 U.S. [590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416, 431 (1975)] (Powell, J., concurring in part); see *Illinois v. Gates,* 462 U.S. at 260, 103 S.Ct. at 2344, 76 L.Ed.2d at 563 (White, J., concurring in the judgment) ]"; and (4) the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." 468 U.S. at 923, 104 S.Ct. at 3421–22, 82 L.Ed.2d at 698–99.
*Adkins,* 176 W.Va. at 625, 346 S.E.2d at 774–75.

trial. Therefore, the appellant's conviction is reversed.

Reversed.