**FILED**

**May 29, 2026**

**released at 3:00 p.m.**
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

_____

No. 25-340

_____

STATE OF WEST VIRGINIA EX REL. STATE OF WEST VIRGINIA,
Petitioner,

V.

THE HONORABLE DEBRA MCLAUGHLIN, JUDGE OF THE CIRCUIT COURT OF
BERKELEY COUNTY, WEST VIRGINIA, AND AARON CURTIS LEWIS,
Respondents.

_____

Petition for a Writ of Prohibition

WRIT DENIED

_____

Submitted: April 21, 2026
Filed: May 29, 2026

John B. McCuskey, Esq.
Attorney General
Holly M. Mestemacher, Esq.
Assistant Attorney General
Sandra M. Walls, Esq.
Assistant Attorney General
Office of the Attorney General
Charleston, West Virginia
Attorneys for the Petitioner

Cameron T. Lefevre, Esq.
S. Andrew Arnold, Esq.
Arnold & Bailey PLLC
Charles Town, West Virginia
Attorneys for the Respondent Aaron
Curtis Lewis

CHIEF JUSTICE BUNN delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.    "The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented." Syllabus Point 5, *State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807 (1992), *superseded on other grounds by statute as recognized in State v. Butler*, 239 W. Va. 168, 179 n.27, 799 S.E.2d 718, 729 n.27 (2017).

2.    "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ had no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent

disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

3.     "Probable cause for the issuance of a search warrant exists if the facts and circumstances provided to a magistrate in a written affidavit are sufficient to warrant the belief of a prudent person of reasonable caution that a crime has been committed and that the specific fruits, instrumentalities, or contraband from that crime presently may be found at a specific location. It is not enough that a magistrate believes a crime has been committed. The magistrate also must have a reasonable belief that the place or person to be searched will yield certain specific classes of items. There must be a nexus between the criminal activity and the place or person searched and thing seized. The probable cause determination does not depend solely upon individual facts; rather, it depends on the cumulative effect of the facts in the totality of circumstances." Syllabus Point 3, *State v. Lilly*, 194 W. Va. 595, 461 S.E.2d 101 (1995).

**BUNN, Chief Justice:**

After a grand jury charged respondent, Mr. Aaron Curtis Lewis, in a three-count indictment, the Circuit Court of Berkeley County granted Mr. Lewis's motion to suppress evidence seized pursuant to a warrant to search his home after finding that the search warrant was both overbroad and lacked probable cause. The court's order recognized that the warrant had multiple infirmities, including (1) the affidavit submitted to the magistrate contained information obtained from a prior illegal search; and (2) the warrant was overbroad, as it listed possession of "CDS" as the crime that had allegedly been committed and the affidavit only discussed marijuana, yet the warrant's list of items to be seized included heroin, methamphetamine, and items related to drug trafficking.[1] Further, the circuit court found that a redacted affidavit removing the information obtained in the prior illegal search did not contain sufficient probable cause to search for items related to drug trafficking. The circuit court refused to apply the good faith exception to the exclusionary rule and entered an order preventing the State from using at trial the evidence seized pursuant to the search warrant. The State filed a petition for a writ of prohibition asking this Court to prevent the circuit court from enforcing its suppression order, arguing that the circuit court had "usurped judicial authority" and frustrated the fair administration of justice. Because we find that the circuit court did not exceed its legitimate

---

[1] The record does not define "CDS," but the context indicates it refers to controlled substances.

1

authority and did not commit clear error, particularly in light of the search warrant's constitutional shortcomings, we deny the writ.

# I.

## FACTUAL AND PROCEDURAL HISTORY

We recite the initial facts relating to the executed search warrant as Patrolman R.J. Holloway with the Martinsburg City Police Department ("MCPD") narrated them in his affidavit submitted to a magistrate court on July 24, 2020. On that day, Patrolman Holloway responded to a report that a suicidal woman "allegedly stabbed herself in her stomach." When he arrived at an address in Martinsburg, West Virginia, the woman's husband told him that she "walked around back." Patrolman Holloway walked toward the backyard, where he saw another individual, respondent Aaron Curtis Lewis, whom he already knew. Patrolman Holloway told Mr. Lewis to "walk towards" him and asked Mr. Lewis if "there was anybody back there." Mr. Lewis did not respond to Patrolman Holloway verbally; Patrolman Holloway instructed him to "continue" out of the way.

Patrolman Holloway recited in the warrant's affidavit that he and other officers searched for the woman in the backyard but did not find her. Law enforcement then attempted to contact all the rear apartments' residents "to advise them of the situation" and determine whether they had seen the victim. When Patrolman Holloway "attempted contact" at Apartment 4, Aaron Lewis Jr., eighteen years old, opened the door of the

2

residence and Patrolman Holloway "instantly detected a strong odor of marijuana." The officer asked Mr. Lewis Jr. whether the woman was inside the apartment and also inquired who else was inside; Mr. Lewis Jr. told Patrolman Holloway he was with his seventeen-year-old "little cousin[.]"

Patrolman Holloway told Mr. Lewis Jr. to sit on the front step of the residence while he focused on "locating the suicidal victim." Mr. Lewis Jr. denied consent to search the apartment after Patrolman Holloway told him that he "detected the odor of marijuana." Patrolman Holloway also "had the cousin . . . step out of the residence."

The affidavit noted that law enforcement "secur[ed] the residence in order to obtain a search warrant." While Patrolman Holloway and another officer performed what the affidavit described as "a security sweep to ensure there was actually only the two of them" inside the residence, Patrolman Holloway saw "a large bundle of what appeared to be [United States] currency" on a table in the living room and "two clear plastic bowls containing green leafy substances" on the stove. Other officers "stayed on scene to ensure no one enter[ed] the residence" while Patrolman Holloway completed the search warrant application.

In the search warrant affidavit, Patrolman Holloway explained his drug trafficking investigation experience and outlined the types of evidence that law

3

enforcement officers often find with drug trafficking investigations, including cash, drug paraphernalia, photographs of individuals involved in sale or use of controlled substances, records of sales, and firearms. Patrolman Holloway concluded his affidavit, stating "It is the belief of this officer that CDS is currently being held in said residence based upon the odor of Marijuana stemming from the residence and the suspected CDS Observed [sic] in plain view during the security sweep of the residence."

The front page of the search warrant alleged that there was probable cause for a warrant to search Mr. Lewis's residence, and that Mr. Lewis, Mr. Lewis Jr.,[2] and the cousin did unlawfully and feloniously "posses [sic] CDS[,]" but did not assert that the crime being investigated was possession with intent to distribute controlled substances or list any citations to the West Virginia Code.

The warrant included an attachment listing the "items to be seized":

1.  Any and all controlled substances as defined in [W. Va. Code §] 60A-4-401 . . . including but not limited to heroin and methamphetamine.
2.  Any and all currency.
3.  Any and all firearms and ammunition.
4.  Any and all keys, motel receipts, ledger and personal identifiers.
5.  Any and all photographs and digital storage devices.
6.  Any and all drug paraphernalia items.

---

[2] The warrant in the record appears to have cut off the "Jr." suffix from Mr. Lewis Jr.'s name.

7. Any and all items derived from the illicit sale of narcotics[.]
8. Any and all safes or storage containers.
9. Any and all evidence of narcotics trafficking.
10. Any and all evidence of a crime.

The magistrate issued the search warrant that same day, and law enforcement searched the residence. According to the property receipt listing of the items seized by law enforcement, officers found two "tubs" of marijuana; a bag of suspected heroin; two small bags of marijuana; a pistol, a magazine, and ammunition; a bag of suspected crack cocaine; and another bag of suspected marijuana. Law enforcement also found $66 in cash.[3]

A Berkeley County grand jury returned a three-count indictment in February 2022 charging Aaron Curtis Lewis with one count of possession with intent to distribute crack/cocaine base,[4] one count of possession with intent to distribute a controlled substance "in which fentanyl was involved, either alone or in combination with heroin[,]"[5] and one count of felony possession of a firearm by a prohibited person.[6]

---

[3] The property receipt indicated the cash amount was $76, but the dollar amounts of the bills listed equals $66.

[4] *See* W. Va. Code § 60A-4-401(a)(1).

[5] *See* W. Va. Code § 60A-4-415(b)(3). We note that the Legislature repealed this statute, effective June 10, 2022.

[6] The indictment charged a violation of West Virginia Code § 61-7-7(b)(2) and listed federal convictions of "conspiracy to possess with intent to distribute crack cocaine,

5

In October 2023, Mr. Lewis moved the circuit court to suppress all evidence that had been seized from his home on July 24, 2020, pursuant to the Fourth Amendment to the United States Constitution and article III, section 6 of the West Virginia Constitution. Mr. Lewis contended that no exception to the warrant requirement applied to Patrolman Holloway's "initial entry" as

> (1) no consent was given to enter, (2) he had no individualized suspicion that a dangerous weapon was present and posed a threat to himself and others, and (3) no exigent circumstances existed at the time of the initial entry.

In his motion, Mr. Lewis further alleged that because Patrolman Holloway "claimed to have observed items of contraband in plain view" during this initial entry and used the alleged contraband, along with the purported smell of marijuana, as bases for probable cause to obtain the search warrant, the warrant was "based, in part, on this fruit of the poisonous tree." Mr. Lewis noted that "beyond the alleged smell of marijuana," the officer "had no other indication that contraband was present in the apartment or that anything illegal was going on inside the apartment[,]" arguing that the affidavit did not allege that Patrolman Holloway saw drugs, cash, or firearms from the doorway and did not see any person smoking or using marijuana. Mr. Lewis also argued that the warrant was overly broad in scope and that the bare-bones nature of the affidavit precluded the officers from reasonably relying on the search warrant, contending that the good faith exception in

distribution of crack cocaine, and distribution of cocaine base" as the underlying felony crimes of violence. (Capitalization omitted).

6

*United States v. Leon*, 468 U.S. 897 (1984), which would have prevented items from being suppressed due to reasonable officer reliance on the warrant, did not apply.

In its written response to the suppression motion, the State argued that the responding officers, including Patrolman Holloway and Patrolman Miller, developed probable cause to search the house when they smelled marijuana from the porch, so probable cause supported a belief that marijuana was in the home "based upon the strong aroma[.]" The State, however, conceding that the "somewhat prolonged delay" between Mr. Lewis Jr. answering the door and the officers' entry into the home caused the entry to be "likely improper[,]" attached a redacted affidavit to its response that deleted the information regarding the evidence the officers saw when first entering the home. The State also argued, however, that odor of marijuana detected at the doorway, as set forth in the redacted affidavit, still supported a finding of probable cause that the home contained marijuana and justified the search of the home.

At the suppression hearing, the circuit court raised concerns regarding the constitutionality of the warrant. The court offered to let the parties provide additional briefing on two issues: (1) whether probable cause existed to search the residence based on

only the smell of marijuana, and (2) whether the search warrant was overbroad regarding its description of the items to be seized.[7]

Ultimately, the circuit court granted Mr. Lewis's motion to suppress. In its order, the court found, based on the State's proffer, that ten minutes passed from Mr. Lewis Jr.'s denial of consent to enter the residence to the "security sweep to look for other individuals in the residence[.]" The court further found that, because the State acknowledged that "the warrantless search was improper," the court could only consider the odor of marijuana as evidence to establish probable cause for the search warrant and thus could not consider the items viewed by law enforcement during the warrantless entry. The court found that the search warrant contained "no admissible evidence of trafficking[.]" Still, the court noted, "[d]espite the lack of any evidence to suspect drug trafficking, the items listed to be seized [were] those items related to drug traffic[k]ing and not just marijuana." The court recognized that "no articulable facts . . . create[d] a nexus between the defendant's home and the trafficking of illegal drugs" and that "[t]he drugs stated within the search warrant that [were] being searched for, were listed as heroin and methamphetamine." While the court acknowledged the State's explanation that this listing

---

[7] The record indicates that, by the time of the suppression hearing, Patrolman R.J. Holloway was no longer employed by the MCPD. The State noted to the circuit court that he had "an administrative suspension during an investigation, . . . was ultimately permitted to return to active duty[,] and eventually left law enforcement of his own choosing." Another officer who participated in the search testified.

8

of drugs was a "cut and paste error," the court noted that "the entirety of the search warrant appears to be a cut and paste error." The court also had concerns about the recent change in the laws regarding the legality of hemp and noted that hemp and marijuana have the same look and odor when burned and unburned.

The circuit court ultimately found that probable cause did not exist to search Mr. Lewis's home. The court found that the "minimal circumstances" of the "the smell of marijuana and two teenagers alone in a home" with "[n]o articulable facts" linking the smell of marijuana to anything else, "combined with the overbreadth of the contents stated in the warrant as the items being looked for in combination with the only crime being simple possession [did] not warrant the invasion of one's home by government search."

The circuit court also concluded that the smell of marijuana was "insufficient to show that beyond the open door there was probably evidence of illegal drug trafficking and/or the possession of heroin, methamphetamines, and/or other illegal drugs." When suppressing the evidence, the court found that "[w]hile the search warrant application states concern for only simple possession of controlled substance, the items listed to be seized are more consistent with items associated with drug trafficking, for which there was no probable cause stated." The court also refused to apply the *Leon* good faith exception to the exclusionary rule, which would have permitted the State to use evidence seized pursuant to a faulty warrant, as the affidavit was "bare bones."

9

The State filed a petition for a writ of prohibition, requesting that this Court prevent the circuit court from enforcing its suppression order. In this action, the State argues that the court committed clear legal error and exceeded its authority, suggesting that the court "improperly distort[s] the standard for probable cause" and "presents a serious threat to a law enforcement's ability to investigate drug offenses[.]" Given the search warrant's constitutional deficiencies, we disagree and deny the writ of prohibition.

## II.

### STANDARD FOR ISSUANCE OF WRIT

The State may request a writ of prohibition in limited circumstances in criminal cases, asking that this Court prevent a circuit court from enforcing an order:

> The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented.

Syl Pt. 5, *State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807 (1992), *superseded on other grounds by statute as recognized in State v. Butler*, 239 W. Va. 168, 179 n.27, 799 S.E.2d 718, 729 n.27 (2017).

10

When the State alleges that the circuit court exceeded its legitimate powers, this Court has discretion to issue the writ:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ had no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).[8]

---

[8] We note that we review the circuit court's suppression of evidence differently when the State seeks a writ than when we review a defendant's appeal to this Court after a circuit court *denies* a motion to suppress. When a defendant appeals his conviction, and bases his appeal in whole, or in part, on the failure of the circuit court to suppress evidence that he alleges was obtained in violation of his constitutional rights, we "construe all facts in the light most favorable to the State, as it was the prevailing party below" and give deference to the circuit court's factual findings, which we review for clear error. Syl. Pt. 1, in part, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996). Furthermore, we affirm a circuit court's denial of a motion to suppress evidence "unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made." Syl. Pt. 2, in part, *id*. However, here, we look to the *Hoover* and *Lewis* factors as described, and no such consideration in favor of the State applies.

11

## DISCUSSION

As we discuss below, the circuit court did not abuse its legitimate powers in suppressing evidence seized from Mr. Lewis's residence. *See* Syl Pt. 5, *Lewis*, 188 W. Va. 85, 422 S.E.2d 807. We find that the court's suppression of the State's evidence and the court's refusal to apply the good faith exception from *Leon* were not clearly erroneous. We thus deny the requested writ of prohibition. *See* Syl. Pt. 4, *Hoover*, 199 W. Va. 12, 483 S.E.2d 12.

Specifically, the circuit court did not clearly err in finding that the search warrant was unconstitutionally overbroad and lacking in particularity. The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

This safeguard also "binds the states." *State v. Lacy*, 196 W. Va. 104, 110, 468 S.E.2d 719, 725 (1996). Likewise, article III, section 6 of the West Virginia Constitution prohibits "[u]nreasonable searches and seizures" by the government:

> The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation,

12

particularly describing the place to be searched, or the person or thing to be seized.

These constitutional protections "prohibit[] the issuance of general warrants allowing officials to burrow through a person's possessions looking for any evidence of a crime." *Lacy*, 196 W. Va. at 110, 468 S.E.2d at 725. Accordingly, "a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *Kentucky v. King*, 563 U.S. 452, 459 (2011) (discussing when exigency justifies a warrantless search). Probable cause for a search warrant exists when an affidavit demonstrates that "a prudent person of reasonable caution" could believe that: (1) "a crime has been committed[,]" (2) that certain evidence of that crime may be found at a particular location, and (3) that at that location, specific items—with a "nexus" to the alleged criminal activity and the place searched—will be found:

> Probable cause for the issuance of a search warrant exists if the facts and circumstances provided to a magistrate in a written affidavit are sufficient to warrant the belief of a prudent person of reasonable caution that a crime has been committed and that the specific fruits, instrumentalities, or contraband from that crime presently may be found at a specific location. It is not enough that a magistrate believes a crime has been committed. The magistrate also must have a reasonable belief that the place or person to be searched will yield certain specific classes of items. There must be a nexus between the criminal activity and the place or person searched and thing seized. The probable cause determination does not

13

depend solely upon individual facts; rather, it depends on the cumulative effect of the facts in the totality of circumstances.

Syl. Pt. 3, *State v. Lilly*, 194 W. Va. 595, 461 S.E.2d 101 (1995).

A warrant meeting these constitutional requirements "must particularly describe the place to be searched and the things or persons to be seized." *Lacy*, 196 W. Va. at 110, 468 S.E.2d at 725 (citing *State v. Greer*, 130 W. Va. 159, 164-65, 42 S.E.2d 719, 722-23 (1947)). The United States Court of Appeals for the Second Circuit helpfully instructs that the warrant particularity requirement has "three components[,]" similar to the nexus requirement this Court issued in *Lilly*. *See United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013). To meet that particularity requirement, "[a] warrant must identify the specific offense for which the police have established probable cause[,] . . . must describe the place to be searched[,] . . . [and] must specify the 'items to be seized by their relation to designated crimes.'" *Id.* at 445-46 (first alteration in *Galpin*) (quoting *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010) (other internal citations omitted)). Particularly pertinent to our analysis, *Galpin* explains that the listed items to be seized must meet the probable cause standard as well: "[a]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon

14

which the warrant is based*." Id.* at 46 (quoting 2 W. LaFave, *Search & Seizure* § 4.6(a) (5th ed. 2012)).[9]

In its petition, the State asserts that the circuit court misapplied the probable cause standard when excluding the State's evidence and seeks a writ of prohibition purportedly "to reaffirm that the odor of marijuana alone can provide probable cause to search a particular location." The State focuses primarily on the court's probable cause pronouncement, boldly asserting that "[t]he magistrate had no difficulty identifying a clear nexus between the odor of marijuana emanating from [Mr. Lewis's] home and the search for controlled substances and related items, such as cash and firearms."

We disagree that our decision in this case is confined to a resolution of the State's simplistic probable cause argument. Here, the circuit court's suppression of the evidence based upon its determination that the warrant was overbroad, and thus lacking in particularity, was not clearly erroneous. The warrant, on its face and as presented to the magistrate, failed to make the necessary the connection between the crime alleged and that purported crime's relation to the items to be seized. As the court recognized, the first page of the warrant stated that the offense alleged to have been committed was *possession* of "CDS," not drug trafficking. Yet, as the court pointed out in its suppression order, "the

---

[9] The 2025 update to this treatise also contains this quote. *See* 2 Wayne R. LaFave, *Search & Seizure* § 4.6(a) (6th ed. 2025).

items listed to be seized are those items related to drug traffic[k]ing and not just marijuana." Plainly, the court did not err in finding that the warrant was the type of general, overbroad warrant the *Lacy* Court warned against. *See* 196 W. Va. at 110, 468 S.E.2d at 725.

Second, as the circuit court recognized, nothing in the affidavit, as redacted, connected the alleged crime—possession of "CDS"—with the items to be seized, which related to drug trafficking. The State conceded that the affidavit contained information obtained via an unconstitutional search of the home. When the court then considered the warrant's affidavit with the illegally obtained information redacted, it found that the only evidence in the affidavit of a potential crime was the smell of marijuana. In other words, in addition to the warrant's face lacking "drug trafficking" as any alleged crime that law enforcement sought to investigate, the court also had no evidence in the affidavit of drug trafficking to consider when examining whether probable cause supported the issuance of the warrant. Without that evidence, the court found "no articulable facts provided that create a nexus" between the home and evidence of drug trafficking. The court was not supplanting the magistrate court's determination of probable cause, as the State now proposes, but was merely eliminating the illegally obtained information from consideration to determine whether probable cause survived in the affidavit.[10] The State also now argues

---

[10] The method the circuit court used to examine the warrant in a piecemeal manner has not yet been specifically addressed by this Court and we do not do so here. The Court has previously evaluated an affidavit's sufficiency when it "contains both lawfully and unlawfully obtained information[,]" explaining that a court must measure whether *overall*

16

that that the items listed in the attachment to the search warrant were "logically connected to the possession of controlled substances" without any meaningful analysis of the distinction between drug trafficking and drug possession or the language of the redacted affidavit. In sum, the list of items to be seized was "broader than [could] be justified by the probable cause upon which the warrant [was] based." *Galpin*, 720 F.3d at 446 (quoting LaFave, *supra*, § 4.6(a)). In recognizing that nothing in the redacted affidavit connected the residence to the drug trafficking items to be seized, the circuit court did not clearly err.

Finally, the circuit court did not err when it recognized that the search warrant's "items to be seized" list included heroin or methamphetamine, and was again

---

"'the untainted information, considered by itself, establishes probable cause for the warrant to issue.'" *State v. Peacher*, 167 W. Va. 540, 572, 280 S.E.2d 559, 580 (1981) (quoting *James v. United States*, 418 F.2d 1150, 1151 (D.C. Cir. 1969)). Then, "[i]f the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant, apart from the tainted information, the evidence seized pursuant to the warrant is admitted." *Id.*; *see also* Syl. Pt. 2, *State v. Lilly*, 194 W.Va. 595, 461 S.E.2d 101 (1995) ("A search warrant affidavit is not invalid even if it contains a misrepresentation, if, after striking the misrepresentation, there remains sufficient content to support a finding of probable cause. Probable cause is evaluated in the totality of the circumstances.").

The circuit court here recognized the particularity requirement for search warrants, quoting *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985), and stating that a search is "confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." However, without objection by the parties, the circuit court appeared to evaluate the warrant under the severability doctrine, which, rather than evaluating the warrant overall, allows a court to suppress evidence seized pursuant to part of a warrant that lacks particularity or is overbroad, but does not suppress evidence "seized pursuant to the valid parts of the warrant." William E. Ringel, *Searches and Seizures, Arrests and Confessions* § 5:20 (2d ed. 2026). This Court has not adopted the severability doctrine and it is unnecessary to weigh its applicability here.

17

overbroad and lacking in particularity. Whether this was only—as the State maintains—a "copy and paste error," those controlled substances had nothing to do with any purported investigation. As we have explained, valid warrants require probable cause connecting the purported crime with a location and the specific items to be seized. *See* Syl. pt. 3, *Lilly*, 194 W. Va. 595, 461 S.E.2d 101.

At oral argument, the State insisted that the evidence was wrongly suppressed because law enforcement did what they were supposed to do by seeking a search warrant before searching a home. However, the State's position not only fails to grapple with the illegal predicate search included in detail in the affidavit considered by the magistrate, but completely ignores the obvious defects in the warrant. It also sweepingly discounts the circuit court's findings regarding particularly that we have previously recognized—the absence of the constitutionally required nexus between the purported crime to be investigated, the affidavit's contents, and the items to be seized listed in the issued warrant itself. *See id*. The court did not clearly err in concluding that the search warrant was overbroad and rife with fatal particularity problems.

For all these reasons, we need not reach the State's argument regarding whether the smell of marijuana alone could have provided probable cause to search Mr. Lewis's residence. The circuit court carefully considered an overbroad, careless warrant and warrant application, which issued originally based in part on an unconstitutional

search. The court's subsequent suppression of the evidence resulting from the search performed pursuant to that defective warrant was not clearly erroneous.

The State also argues that the circuit court clearly erred by refusing to apply the good faith exception recognized in *United States v. Leon*, 468 U.S. 897 (1984). We again disagree. In *Leon*, the United States Supreme Court recognized that a court need not exclude evidence seized pursuant to a "defective" search warrant when a law enforcement officer "acts in good faith reliance on the warrant issued by the magistrate." *State v. Adkins*, 176 W. Va. 613, 624-25, 346 S.E.2d 762, 774-75 (1986) (analyzing *Leon*, listing exceptions to the good faith exception, and refusing to apply the good faith exception to a defective warrant). In determining whether to apply the good faith exception to items seized pursuant to a faulty warrant, courts do not consider "simply whether the officers thought they were doing the right thing[.]" *See State v. Dalpiaz*, 783 N.E.2d 976, 987-88 (Ohio Ct. App. 2002) (finding that the good faith exception did not apply). Rather, the good faith exception standard "seeks to answer the 'objectively ascertainable question' of 'whether a reasonably well trained officer would have known that the search was illegal in light' of binding appellate precedent." *United States v. Martin*, 807 F.3d 842, 847 (7th Cir. 2015) (quoting *Herring v. United States*, 555 U.S. 135, 145 (2009)).

Again, we do not find that the circuit court's ruling regarding the good faith exception was clearly erroneous. The original warrant application was based, in part, on a

19

search that the State admitted was illegal, and the warrant had additional numerous, identified infirmities discussed above, including listing controlled substances not even at issue in the items to be seized. While this Court's application of the good faith exception is sparse, we have previously stated that "[a]lthough *Leon* protects police work and evidence obtained from being excluded because of error beyond the control of investigating officers, here the error was completely within the control of the investigating officers." *State v. Thompson*, 178 W. Va. 254, 258, 358 S.E.2d 815, 819 (1987). For these reasons, we do not find that the court's refusal to apply the good faith exception was clearly erroneous.

Because the circuit court did not clearly err in suppressing the evidence and refusing to apply the good faith exception, and certainly did not abuse its legitimate powers in its rulings, we deny the writ.

## IV.

## CONCLUSION

For the reasons stated above, this Court denies the requested writ of prohibition to prevent the circuit court from enforcing its suppression order.

Writ Denied.

20