534 S.E.2d 23

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Jason Anthony PARR, Defendant Below, Appellant.**

No. 26898.

Supreme Court of Appeals of West Virginia.

Submitted April 12, 2000.

Decided July 7, 2000.

Steven K. Mancini, Assistant Public Defender, Welch, West Virginia, Attorney for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Leah Perry Macia, Assistant Attorney General, Charleston, West Virginia, Attorneys for the Appellee.

PER CURIAM:

Jason Anthony Parr (hereinafter referred to as "Mr. Parr"), appellant/defendant, appeals his conviction and sentence for the crime of possession with intent to deliver a controlled substance. The Circuit Court of McDowell County sentenced Mr. Parr to imprisonment for one to fifteen years. In this appeal, the following errors have been assigned: (1) the denial of Mr. Parr's motion to suppress evidence, (2) the denial of his identity defense evidence, (3) the failure to establish the identity of an arrested suspect, and (4) the calling of Mr. Parr's twin brother, Mark, as a witness. After a review of the briefs submitted and the record in this case, we affirm the conviction and sentence.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On the afternoon of October 1, 1998, a confidential informant advised Deputy Michael Brooks that "one of the Parr twins" was selling drugs on McDowell Street in Welch, West Virginia.[1] Deputy Brooks, accompanied by Deputy Virgil Green, immediately drove in an unmarked car to the area of the alleged drug trafficking.

Upon arriving at the scene of the alleged crime, the officers observed Mr. Parr leaving a building and getting into the front passenger seat of a nearby parked car. Both officers approached the car. Deputy Brooks testified at the suppression hearing that as he approached the car he "observed Jason, kindly, slumping down in the seat and going into his right trouser pocket[.]" Deputy Brooks immediately reached through the open window of the car and grabbed Mr. Parr's right arm. Deputy Brooks grabbed Mr. Parr's arm because he thought Jason was getting a weapon. Deputy Brooks proceeded to pull Mr. Parr's arm out of his pocket and after doing so, reached into the pocket and pulled out a plastic bag containing crack cocaine. Mr. Parr was then placed under arrest and transported to police headquarters.

When the officers arrived at police headquarters, Mr. Parr gave a confession, on video-tape, to possessing crack cocaine with the intent to sell. Subsequently, an indictment was returned charging Mr. Parr with one count of possession with intent to deliver crack cocaine in violation of W. Va.Code § 60A–4–401(a) (1983). A jury trial was held on February 4–5, 1999. The jury convicted Mr. Parr of the charged offense. Thereafter, the trial court thereafter sentenced Mr. Parr to imprisonment for one to fifteen years. It is from this conviction and sentence that Mr. Parr now appeals.

1. The defendant, Jason Anthony Parr, has a twin brother named Mark Parr. Deputy Brooks knew both brothers, although he could not tell them apart.

2. In conjunction with his claim that the search was unlawful, Mr. Parr further argues that, should this Court find the search violated constitutional principles, evidence of his confession must be excluded as fruits of the poisonous tree.

## II.

### DISCUSSION

#### A. Denial of Mr. Parr's Motion to Suppress Evidence

The first assignment of error advanced by Mr. Parr is that the trial court committed error by failing to suppress evidence of the crack cocaine taken from him.[2] Mr. Parr contends that all such evidence was taken in violation of state and federal constitutional prohibitions of unreasonable searches and seizures. In Syllabus point 1 of *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996), this Court set forth the following standard to be used in reviewing issues raised concerning motions to suppress:

> When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

We further noted in Syllabus point 2 of *Lacy:*

> In contrast to a review of the circuit court's factual findings, the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo*. Similarly, an appellate court reviews *de novo* whether a search warrant was too broad. Thus, a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or,

"Where a confession is induced by illegally seized evidence, the confession is subject to exclusion as 'fruit of the poisonous tree.'" Syl. pt. 3, *State v. Williams*, 162 W.Va. 309, 249 S.E.2d 758 (1978). However, "absent a constitutional violation, the 'fruits of the poisonous tree' doctrine has no applicability." *State v. Bradshaw*, 193 W.Va. 519, 540, 457 S.E.2d 456, 477 (1995).

based on the entire record, it is clear that a mistake has been made.

■ Mr. Parr argues that Deputy Brooks engaged in an unlawful evidentiary search of his right trouser pocket in that Deputy Brooks' action was not a protective frisk as allowed under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (permitting a limited frisk of a suspect's outer clothing to discover weapons during an investigative stop). Similarly, this Court has stated, in Syllabus point 3 of *State v. Choat*, 178 W.Va. 607, 363 S.E.2d 493 (1987), we state that:

> Where a police officer making a lawful investigatory stop has reason to believe that an individual is armed and dangerous, that officer, in order to protect himself and others, may conduct a search for concealed weapons, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be certain that the individual is armed; the inquiry is whether a reasonably prudent man would be warranted in the belief that his safety or that of others was endangered.

In *State v. Hlavacek*, 185 W.Va. 371, 407 S.E.2d 375 (1991), this Court recognized a limitation to a *Terry–Choat* protective frisk. *Hlavacek* involved the detention of a suspect based upon an anonymous tip that the suspect was engaged in drug trafficking. While the suspect was being detained, a police officer required the suspect empty his pockets. When the suspect complied, he pulled out three marijuana cigarettes from his pockets. This Court found such a search unconstitutional. The Court stated, "[i]n this case, Sergeant Hylton stated that requiring the appellant to empty his pockets made the frisk 'more complete.' While this is undeniably true, we conclude that the extent of the intrusion also made the frisk unconstitution-

al." *Hlavacek*, 185 W.Va. at 376, 407 S.E.2d at 380.

Mr. Parr argues that Deputy Brooks testified that one of the reasons prompting him to make the search was his belief that Mr. Parr had drugs in his pocket. However, during questioning by the trial court, Deputy Brooks gave two reasons for making the search:

> TRIAL COURT: So, you were reaching in his front pocket to see if there was a weapon there?
>
> DEPUTY BROOKS: Yes, Sir, a weapon and/or drugs. Again, I felt that I couldn't get him out of the car. By the time I could open the door, he could possibly break free or possibly retrieved this out his pocket if it was a weapon or drugs, and especially, drugs being the size and what we were looking for, he could have got rid of it.

This Court would have little problem in applying *Hlavacek* to disapprove of the search of Mr. Parr's pocket, were the only basis for the search to prevent the destruction of the drug evidence.[3] However, the unique facts of this case require a different outcome.[4]

In resolving the legality of this search, we are guided by this Court's decision in *Wagner v. Hedrick*, 181 W.Va. 482, 383 S.E.2d 286 (1989). In *Wagner*, the defendant was involved in a motorcycle accident and taken to a hospital. While in the hospital, a police officer searched the trousers of the defendant for identification. During the search the officer discovered a gold coin. The gold coin eventually formed the basis for connecting the defendant to an unsolved murder and robbery. On appeal, the defendant argued that the search of his trousers was unlawful without a warrant. This Court rejected the argument. In doing so, we first noted that "[w]hile the word 'search' is capable of many

---

**3.** Obviously, were Mr. Parr actually under lawful arrest at the time of the search, such a search and any contraband discovered would be admissible against him. *See State v. Woods*, 157 W.Va. 947, 952, 206 S.E.2d 509, 512 (1974) ("[T]he limitations of *Terry v. Ohio* [do] not apply to a search incident to a lawful arrest, and evidence of other unrelated crimes discovered and confiscated during such search may be used in connection with the trial of such crimes.").

**4.** The State relies upon this Court's recent decision in *State v. Matthew David S.*, 205 W.Va. 392, 518 S.E.2d 396 (1999) (per curiam) as authority to sustain the search. We have counseled the bar that per curiam opinions are not controlling authority. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

definitions, the United States Supreme Court has stated that 'a search ordinarily implies an intrusive "quest by an officer of the law." ' J.W. Hall, Search and Seizure § 1:6 (1982). However, 'when there is no intrusion on an expectation of privacy, there is no search.' *Id.*" *Wagner*, 181 W.Va. at 487, 383 S.E.2d at 291. This Court went on to reason as follows:

> Given the facts evident from the record, we cannot find that Wagner could have exhibited a reasonable expectation of privacy in his personal effects in this hospital emergency room on this particular night. Rather, we believe Wagner's expectation of privacy was necessarily diminished by the circumstances under which he was brought into the hospital. Any expectation of privacy which Wagner may have had could not be termed "reasonable" because he was in a hospital emergency room, one which many people had access to and in which many people, particularly medical personnel, were constantly moving around. The area was freely accessible to law enforcement officers, and Trooper Pinion had a right to be there that night by virtue of his duty to investigate this particular accident. It is apparent that Wagner had very little control over what happened in the emergency room area and that he and his personal effects could be placed wherever the hospital staff chose to put them.

*Wagner*, 181 W.Va. at 487, 383 S.E.2d at 291.[5] In the instant case, Mr. Parr's expectation of privacy regarding the contents of his right trouser pocket was not a reasonable expectation under the circumstances.

Deputy Brooks was responding to a tip by a confidential informant that "one of the Parr twins" was engaged in drug trafficking.[6] When Deputy Brooks approached the car in which Mr. Parr was seated, Deputy Brooks had no knowledge of whether Mr. Parr was armed with a dangerous weapon. Deputy Brooks testified that when Mr. Parr saw him approaching the car Mr. Parr immediately "slumped" down in the car and began reaching into his pocket. At this juncture, there was no time for Deputy Brooks to engage in discourse with Mr. Parr. *Terry v. Ohio* clearly states:

> Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded....

> In view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, *it would appear to be clearly unreasonable to deny the officer*

---

**5.** Mr. Parr has cited to the decision in *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), as support for his contention that the search of his pocket was unlawful. In *Dickerson*, a police officer discovered crack cocaine in a suspect's pocket during a protective frisk. The United States Supreme Court held that the search and seizure was unlawful because the officer did not immediately recognize the contraband as crack cocaine. The officer had to engage in a repeated search to determine the substance.

The reliance by Mr. Parr upon *Dickerson* is misplaced. *Dickerson* does not establish a blanket prohibition against seizure of contraband discovered during a protective frisk. Specifically, the United States Supreme Court held in *Dickerson* that:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

508 U.S. at 375–76 113 S.Ct. at 2137, 124 L.Ed.2d. at 346. We also reject Mr. Parr's reliance upon *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (search and seizure of drugs from one of the defendants, in consolidated cases, was unlawful because there was no reasonable belief that defendant was armed and dangerous).

**6.** During the suppression hearing, Mr. Parr indicated that he was not challenging the reliability of the confidential informant. Further, Mr. Parr has not raised this issue in his brief.

*the power to take necessary measures to ... neutralize the threat of physical harm.* 392 U.S. at 23–24, 88 S.Ct. at 1881, 20 L.Ed.2d at 907–08. (Emphasis added.)

As a result of Deputy Brooks' experience as a police officer, upon observing Mr. Parr's actions Deputy Brooks immediately reached into the car, grabbed Mr. Parr's arm and told him to remove his hand from his pocket. Deputy Brooks testified that, at the point he was able to get Mr. Parr to remove his hand from his pocket, he believed his safety was still at risk. Therefore, Deputy Brooks reached into Mr. Parr's pocket to retrieve whatever it was that caused Mr. Parr to initially reach into his trousers.

For this Court to conclude that simply removing Mr. Parr's hand from his pocket was the extent of the permissible constitutional intrusion would unduly expose police officers to life-threatening dangers. We therefore find no error in the trial court's ruling denying Mr. Parr's motion to suppress.

### B. The Denial of Identity Defense Evidence

 The next assignment of error argued by Mr. Parr is that the trial court committed reversible error in prohibiting him from cross examining Deputy Brooks about whether Mr. Parr's twin brother was actually the person arrested by Deputy Brooks. Mr. Parr attempted to prove, through questioning, that his twin brother was, in fact, the person arrested by Deputy Brooks. As a preliminary matter, we note that while "most rulings of a trial court regarding the admission of evidence are reviewed under an abuse of discretion stan-

dard... an appellate court reviews *de novo* the legal analysis underlying a trial court's decision." *State v. Guthrie,* 194 W.Va. 657, 680, 461 S.E.2d 163, 186 (1995) (citations omitted).[7]

 In Syllabus point 1 of *State v. Harman,* 165 W.Va. 494, 270 S.E.2d 146 (1980), this Court addressed the issue of whether evidence implicating a third party as the person who committed a crime is admissible:

In a criminal case, the admissibility of testimony implicating another person as having committed a crime hinges on a determination of whether the testimony tends to directly link such person to the crime, or whether it is instead purely speculative. Consequently, where the testimony is merely that another person had a motive or opportunity or prior record of criminal behavior, the inference is too slight to be probative, and the evidence is therefore inadmissible. Where, on the other hand, the testimony provides a direct link to someone other than the defendant, its exclusion constitutes reversible error.

*Accord* Syl. pt. 2, *State v. Welker,* 178 W.Va. 47, 357 S.E.2d 240 (1987).

The record in this case shows that during cross examination of Deputy Brooks, Mr. Parr was limited in his questioning as to whether his twin brother was the person arrested. Even though limited, Mr. Parr was permitted to elicit testimony from Deputy Brooks that he could not tell the "Parr twins" apart. Furthermore, careful review of the testimony clearly establishes that Mr. Parr sought to engage in pure speculation through his questioning of Deputy Brooks.[8]

---

7. It is provided in Rule 402 of the West Virginia Rules of Evidence that:

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of West Virginia, by these rules, or by other rules adopted by the Supreme Court of Appeals. Evidence which is not relevant is not admissible.

It is further contained in W. Va. R. Evid., Rule 401, that relevant evidence is evidence that tends to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence ."

8. The following excerpts concern defense counsel's cross examination of Deputy Brooks and the trial court's ruling:

DEFENSE COUNSEL: And isn't it, also, a fact that you can't tell them [Parr twins] apart?

DEPUTY BROOKS: Not—Not that good, Sir.

DEFENSE COUNSEL: In fact, at the preliminary hearing, did you not testify, "I can't tell them apart unless they tell me."

DEPUTY BROOKS: Yes, Sir.

DEFENSE COUNSEL: And of course, now, you still can't tell them apart. Nothing's changed since then, has it?

DEPUTY BROOKS: No, Sir.

In view of the record on this issue, we find no error in the trial court's limitation of the cross-examination of Deputy Brooks.

### C. Failure to Establish Identity of Arrested Suspect

 Mr. Parr's third assignment of error is that the trial court erred by failing to grant judgment of acquittal at the close of the State's case-in-chief on the grounds that the State failed to establish Mr. Parr was the person arrested by Deputy Brooks. Thus, Mr. Parr is essentially challenging the sufficiency of the State's evidence against him in the context of the lower court's ruling on his motion for judgment of acquittal. This Court set out the standard of review for a challenge to the sufficiency of the evidence in

DEFENSE COUNSEL: So, at that point, you did not know whether you had arrested Jason Parr or Mark Parr?

DEPUTY BROOKS: Just one of the Parr twins. I knew—I know them as the twins, as I stated.
....

THE COURT: (Interposing) Just one second. Ladies and Gentleman of the Jury, please retire to your jury room for about one minute, please.

(.... [T]he jury was returned to the jury room.)

THE COURT: The Court notes that, throughout most of the portion of this trial and taking of evidence from midday on and certainly this afternoon there has been in the courtroom and remains in the courtroom the twin brother of this Defendant, Jason Parr; that twin brother being Mr. Mark Parr, whom we have just talked about in some detail.

Therefore, it appears clearly under this Court's sequestration orders everything that's been said and done and represented to this Court in the course of this trial that Mr. Mark Parr is not a prospective witness at the jury trial of this case. Of course, the Court will further take judicial notice that in Mark Parr's cases in this Court, ... his counsel in those cases was the Public Defender Office.

And now, apparently, the Public Defender on cross-examination of the State's principal prosecution witness is wanting to ask or bring something about whether Mark Parr, the twin brother, is a liar or whatever. Frankly, Mr. Mancini [defense counsel], the Court cannot see any particular relevancy to any of this in the context of this trial or why this would even be permissible cross-examination. If you can enlighten the Court or convince the Court that this serves some purpose in this trial in this case and is relevant material to any issue during the course of this trial, the Court will gladly stand enlightened.

Syllabus point 3 of *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163:

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, re-

DEFENSE COUNSEL: Yes, Sir, excuse me. Sir, we were attempting to establish that it was Mark Parr that was arrested that afternoon and that he lied and said that he was Jason in order to avoid going to prison by violating his probation.

THE COURT: This defendant was arrested on October 1, 1998, and he was indicted on October 20th, 1998. This is six months later or so, February 4th, 1998, and defense counsel is telling this Court in the middle of this trial for the first time that the gentleman in the videotaped interview and the gentleman who was arrested by Mr. Brooks and Mr. Green in downtown Welch in the middle of the afternoon on October 1, 1998 was not this Defendant, Jason Anthony Parr, but was his twin brother, Mark Parr. Is that correct, Mr. Mancini?

DEFENSE COUNSEL: Your honor, we don't know. We're simply trying to put the State to—

THE COURT: (Interposing) You don't know? You better know and you better tell the Court right now, Mr. Mancini. This is not a game. I'm asking you, are representing to this Court in good faith as an officer of this Court that this Defendant, your client, Mr. Jason Parr, in effect, has an alibi defense that he wasn't there at the time and place this happened and that was not him who was arrested on the date in question by Mr. Brooks and Mr. Green and that was not him in [the] videotape that was just played to this jury for fifteen or twenty minutes, yes, or no, counsel?

DEFENSE COUNSEL: I don't know, Sir. We're trying to put the State to the proof. That's all I'm trying to do is see if the State can prove—

THE COURT: (Interposing) you will not be allowed to ask any more questions on that basis. You will not be allowed to assert that as a defense. Understand?

DEFENSE COUNSEL: I understand, Sir.

gardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Similarly, we have explained that

motions for judgment of acquittal are to be reviewed under the following standard:

" 'Upon motion to direct a verdict for the defendant, the evidence is to be viewed in light most favorable to prosecution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt.' State v. West, 153 W.Va. 325, 168 S.E.2d 716 (1969)." Syl. pt. 1, State v. Fischer, 158 W.Va. 72, 211 S.E.2d 666 (1974).

Syl. pt. 10, State v. Davis, 176 W.Va. 454, 345 S.E.2d 549 (1986).

State v. Garrett, 195 W.Va. 630, 641, 466 S.E.2d 481, 492 (1995). See also State v. Davis, 205 W.Va. 569, 576 n. 10, 519 S.E.2d 852, 859 n. 10 (1999) ("A motion for judgment of acquittal is reviewed under the same standard as articulated in Syllabus Point 1 of State v. Fischer, 158 W.Va. 72, 211 S.E.2d 666 (1974): 'Upon motion to direct a verdict for the defendant, the evidence is to be viewed in light most favorable to prosecution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt.' " ).

After reviewing the record in this case, we find no merit to this third assignment of error. Although the record indicates that Deputy Brooks could not positively distinguish Mr. Parr from his twin brother, the jury was shown a videotape of Mr. Parr giving a confession to the crime charged while in police custody. The videotape of Mr. Parr's confession was sufficient evidence to sustain the State's burden of identification.[9]

### D. Calling of Mr. Parr's Twin Brother as a Witness

 Mr. Parr's last assignment of error asserts that the trial court committed error by calling his twin brother, Mark, as a witness. "The exercise of the right to call witnesses is a discretionary matter with the trial court, and only for an abuse of that discretion which results in prejudice to a party will the trial judge be reversed." Franklin D. Cleckley, Vol. 1, Handbook on Evidence for West Virginia Lawyers § 6–14(D) (1994). See also Syl. pt 2, State v. Medeiros, 80 Hawai'i 251, 909 P.2d 579 (1995) ("A trial court's decision to call its own witnesses ... is reviewed for abuse of discretion."); People v. Betts, 155 Mich.App. 478, 482, 400 N.W.2d 650, 652–653 (1986) (" '[T]he exercise of the right to call a court's witness is a discretionary matter and ... only for an abuse of that discretion resulting in prejudice to the defendant will a trial court be adjudged to be in error and a conviction reversed.' " (quoting 3 Orfield, Criminal Procedure Under the Federal Rules § 26:167, at 462)); Thomas v. State, 301 Md. 294, 312, 483 A.2d 6, 15 (1984) ("[I]t lies within the sound discretion of the trial judge whether to call a person to testify as a court witness and that decision will not be reversed absent a clear abuse of discretion.").[10]

**9.** Mr. Parr attempted to make an issue of whether he was the person arrested. Yet, Mr. Parr did not offer the defense of alibi. Moreover, there was testimony by Deputy Brooks that it was "impossible" for Mr. Parr to have switched places with his twin brother after he was arrested. Finally, defense counsel admitted to the court that he did not intend to call either Mr. Parr or his twin brother to testify inconsistently with the State's proof:

DEFENSE COUNSEL: Yes, Sir, I was not going to put Jason on the stand and have him

say he wasn't the one arrested. That would have been supporting perjury. I'm not going to put Mark on the stand and say he was the one arrested, that would have been supporting perjury....

**10.** Cf. Syl. pt. 1, State v. Farmer, 200 W.Va. 507, 490 S.E.2d 326 (1997) ("A trial court must exercise its sound discretion when questioning a witness pursuant to Rule 614(b) of the West Virginia Rules of Evidence. This Court will review a trial court's questioning of a witness under the abuse of discretion standard. To the extent the issue

The common law right of a trial judge to call witnesses has been preserved in Rule 614(a) of the West Virginia Rules of Evidence, which provides: "The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." *See State v. Grimm*, 156 W.Va. 615, 626, 195 S.E.2d 637, 644 (1973) ("[I]t was not only a right of the court but in some instances a duty to call witnesses or examine witnesses during the trial of a case."). *See also United States v. Time*, 21 F.3d 635, 639 (5th Cir. 1994) ("The judge's right to question a witness is within his discretion so long as he remains impartial and does not exhibit prosecutorial zeal."); *United States v. Agajanian*, 852 F.2d 56, 58 (2d Cir.1988) ("The district court clearly has the power to call its own witnesses, and has considerable discretion in conducting any interrogation .... provided that the court maintains an appearance of impartiality."); *Holland v. Commissioner of Internal Revenue*, 835 F.2d 675, 676 (6th Cir.1987) ("This rule [Federal Rule 614(a)] permits the court to call witnesses on its own motion and allows the court to interrogate witnesses whether called by itself or by a party."); *U.S. Marshals Service v. Means*, 741 F.2d 1053, 1058 (8th Cir.1984) ("Rule 614(a) simply codifies a judge's well-established common law authority to call witnesses."); *State v. Sullivan*, 197 Mont. 395, 404, 642 P.2d 1008, 1012 (1982) (recognizing right of trial court to call witness); *State v. Hagen*, 574 N.W.2d 585, 588 (N.D.1998) (same); *State v. Reaves*, 130 Ohio App.3d 776, 783, 721 N.E.2d 424, 429 (1998) (same); *State v. Wixon*, 30 Wash.App. 63, 77, 631 P.2d 1033, 1042 (1981) (same).

In determining the propriety of a trial court's decision to sua sponte call a witness, we agree with the holding in Syllabus point 4 of *State v. Medeiros*, 80 Hawai'i 251, 909 P.2d 579:

We believe the fundamental tenet that judges must act impartially would suffice as the practical measure of a trial court's discretion in calling witnesses. Because

involves an interpretation of the Rule 614(b) as a matter of law, however, our review is plenary and de novo.").

conduct can only be evaluated in the context in which it takes place, whether the exercise of a court's power to call its own witness was partial can only be answered by reference to the specific circumstances of each case.

Mr. Parr concedes that the trial court had authority to call Mark, but argues that the trial court was limited to calling Mark before the State concluded its case. In support of this contention, Mr. Parr cites to our decision in *State v. Loveless*, 140 W.Va. 875, 87 S.E.2d 273 (1955), wherein we held that "[a] trial judge has the right, and in some instances the duty, to call witnesses to testify, but such witnesses should be called before the state and the defendant have closed their evidence." Mr. Parr seeks to place an interpretation on *Loveless* that we refuse to adopt.

The decision in *Loveless* does not preclude trial courts from calling witnesses after the State or defendant has rested. As was noted by Professor Cleckley in his interpretation of *Loveless*, calling a witness by the trial court "*after* the parties have rested must be sparingly used." Franklin D. Cleckley, Vol. 1, Handbook on Evidence for West Virginia Lawyers § 6–14(D) (1994). We have previously noted that "[a] trial judge in a criminal case has a right to control the orderly process of a trial and may intervene into the trial process for such purpose, so long as such intervention does not operate to prejudice the defendant's case." Syl. pt. 4, in part, *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129 (1979).

In the instant proceeding, the trial court stated on the record that Mark was called by the court because it "was necessary and appropriate in the interest of justice in this case[.]" Based upon the questioning of Mark, it is clear to this Court that the trial court sought to establish from Mark that he was not the person arrested by Deputy Brooks and that he did not switch places with Mr. Parr.[11] Mark testified that he was not the person arrested by Deputy Brooks. While this Court will not encourage or permit trial court's to routinely call witnesses

11. The trial court also, outside of the presence of the jury, asked Mr. Parr if he was in fact Jason Parr. Mr. Parr indicated that he was. Additionally, the trial court extensively questioned Deputy

after the State has rested, we will not impose a blanket prohibition against calling witnesses under such circumstances. *See Capital Marine Supply, Inc. v. M/V Roland Thomas, II,* 719 F.2d 104, 107 (5th Cir.1983) (finding no error in a situation where the district court called a witness on its own motion after the party had rested its case); *State v. Johnson,* 183 Ariz. 623, 635, 905 P.2d 1002, 1014 (1995) (allowing trial court to call witness after both parties rested); Syl. pt. 1, *State v. Medeiros,* 80 Hawai'i 251, 909 P.2d 579 (1995) ("It is within the trial court's discretion to decide to call its own witnesses after the parties have rested in a criminal case."). *People v. Betts,* 155 Mich.App. 478, 482, 400 N.W.2d 650, 652 (1986) (permitting trial court to call witness after both parties rested).

■ Mr. Parr also contends that the trial court departed from its role of impartiality by calling Mark.[12] This contention is meritless. The trial court made certain that its action in calling Mark would be impartial and not be perceived prejudicially to Mr. Parr by the jury, by calling and examining Mark outside the presence of the jury. As we indicated in *State v. Massey,* 178 W.Va. 427, 436, 359 S.E.2d 865, 874 (1987), "[w]hile we do not hold that a judge may never commit reversible error in questioning witnesses in camera, it is apparent that no prejudice flowed from the questioning here involved." We find no error in the trial court's decision to call Mark, nor in the manner in which the trial court questioned him.[13]

## III.

### CONCLUSION

For the reasons set forth in this opinion, the Circuit Court of McDowell County is affirmed.

Affirmed.

Brooks, again outside the presence of the jury, regarding the possibility of Mr. Parr being his twin brother. Deputy Brooks assured the court that Mr. Parr was the person arrested.

12. *See* Syl. pt. 3, *State v. Farmer,* 200 W.Va. 507, 490 S.E.2d 326 (1997) ("The plain language of Rule 614(b) of the West Virginia Rules of Evidence authorizes trial courts to question witnesses—provided that such questioning is done in an impartial manner so as to not prejudice the parties.").

13. Mr. Parr's brief makes a cursory objection, without discussion or legal citations, to the length of the examination of Mark by the trial judge. In our review of the record of the examination by the trial judge, we find no error in the length of the questioning or the nature of the questions asked. *See State v. Taft,* 144 W.Va. 704, 712, 110 S.E.2d 727, 733 (1959) (finding questions asked by trial court of witness were proper). In decisions by this Court where we have disapproved of the length or nature of questions put to a witness by a trial court, such questioning was in the presence of the jury. *See State v. Sandler,* 175 W.Va. 572, 576, 336 S.E.2d 535, 539 (1985) ("The obvious prejudice to the defendant was compounded when the court assumed the role of prosecuting attorney and conducted a lengthy examination of the witness."); *State v. Preece,* 116 W.Va. 176, 187, 179 S.E. 524, 529 (1935) ("[T]he questions of the trial judge betrayed to the jury certain deductions that he had made from the testimony, and that these deductions were plainly adverse to the defendant. They were therefore questions that should not have been asked by the court."); Syl. pt. 4, *State v. Shelton,* 116 W.Va. 75, 178 S.E. 633 (1935) ("Remarks of trial courts with reference to matters of fact which might in any degree influence the verdict are improper."); *Nash v. Fidelity–Phenix Fire Ins. Co.,* 106 W.Va. 672, 679, 146 S.E. 726, 728 (1929) ("We are of the opinion that the extended examination of the witness by the trial judge was error.").